## SAMUEL L. BENNETT *vs.* FANNY B. BROOKS.

The execution of a will on the Lord's day, by a testator, is not " work, labor or business," within the meaning of Gen. Sts. c. 84, § 1, and a will so executed is valid.

APPEAL from a decree of the judge of probate allowing the will of Sarah Ellis.         .

The only reason of appeal insisted on at the hearing before the chief justice was, that the will was signed, declared and published on the Lord's day, and is therefore void.

The will bears date January 12th 1862, which was Sunday, and it was proved that it was signed by the testatrix, in presence of the three subscribing witnesses, on the forenoon of that day. The testatrix died March 31st 1863, at the age of eighty-seven years, six months. and fourteen days.   When the will was executed she was in her usual condition of health and able to be about the house.

The case was reserved for the consideration of the whole court.   If the will is invalid, the decree of the judge of probate

admitting it to probate is to be reversed; but if it is valid, the decree is to be affirmed.

*F. H. Dewey & E. B. Stoddard,* for the appellant.

*A. Dadmun,* ( *G. F. Hoar* with him,) for the appellee.

BIGELOW, C. J.   A just interpretation of the statutes for the due observance of the Lord's day does not require us to hold that the execution of a will on that day is an act within the implied prohibition of the law.   It is a mistake to suppose that the legislature intended to forbid or restrain every act of a secular or temporal nature, not coming within the exception in the statute, so that on the day set apart for religious services and observances nothing else could be done, unless it might be properly designated as a charitable or necessary act.   The purpose of the statute is only to prevent the carrying on of the usual and ordinary callings and occupations of men, by which they gain a livelihood or acquire property, and the doing of acts such as usually belong to or are connected with worldly affairs and the common transactions of business.   Previous to the *St.* of 1791, *c.* 58, § 1, all the acts of the province for the due observance of the Lord's day were framed, like the English statute, 27 Car. II. *c.* 7, § 1, so as to prohibit persons from doing only " any labor, business or work of their ordinary callings."   See Prov. Sts. 3 Geo. I. *c.* 2; 1 Geo. II. *c.* 6 ; 1 Geo. III. *c.* 1.   Under these enactments, a person might lawfully do any act on the Sabbath, however secular or temporal, provided it was not included within the class of dealings or transactions which might properly be deemed to belong to his ordinary and usual employment on week days.   Such has been the judicial construction of the English statute. *Drury* v. *Defontaine,* 1 Taunt. 131.   *Bloxsome* v. *Williams,* 3 B. & C. 232.   *Scarfe* v. *Morgan,* 4 M. & W. 270. Our present statute, however, was doubtless intended to have a broader application.   By the omission of the clause confining the prohibitions to the exercise of the " ordinary callings " of persons, and extending it so as to include " any manner of labor, business or work," the intention of the legislature seems to have been to comprehend within the prohibition all acts of a secular nature belonging to or connected with ordinary business or common

worldly affairs, although they might not fall within the line of the daily business or occupation in which a person happened to be employed. Such indeed has been the interpretation which has been put on the statute. In *Pattee* v. *Greely*, 13 Met. 284, it was said by this court that the prohibition was "extended to the making of bargains and all kinds of trafficking;" so that a contract entered into on the Sabbath, within the hours designated in the statute, would be tainted with illegality and invalid, although it had no connection with the particular calling or business in which either of the parties was usually engaged at the time the transaction took place. But that the legislature did not intend to carry the prohibition further than to restrain the exercise of all those occupations and employments which make up the common and daily business of mankind, and such dealings and bargains as properly and usually appertain thereto, is manifest from the clause which precedes the general words in the statute, "any manner of labor, business or work." In the construction of statutes it is a safe and sound rule of exposition to look at the context for the purpose of ascertaining the sense in which particular words or phrases are used. Unless a different intention is clearly indicated, the presumption is that language in a statute is used *in eodem sensu,* or to signify matters *ejusdem generis* with that with which it stands connected, and that general expressions are to be taken as having reference to the same or similar subjects or things as those which are specifically named in the same clause or section. By designating the keeping open of a "shop, warehouse or work-house," as an employment which would subject a person to the penalty imposed by the statute, the inference is a fair and reasonable one, that the legislature intended to embrace, by the more comprehensive terms which follow, all other secular callings and occupations, whatever might be their nature, which were pursued in like manner or for similar purposes and objects. Thus interpreted, the conclusion would seem to be legitimate, that all business was intended to be prohibited on the Sabbath which might fairly be deemed to be an employment or calling carried on for purposes of gain or profit, and all transactions and dealings

connected therewith, or such as are usually incidental thereto. But beyond this no just rule of interpretation can extend the provisions of the statute. Certainly this construction gives a sufficiently wide scope to the operation of the prohibition which the legislature intended to enforce, and affords an effectual remedy for the mischief which the enactment was designed to prevent. This is declared in the preamble to the *St.* of 1791, *c.* 58, to be that "thoughtless and irreligious persons, inattentive to the duties and benefits of the Lord's day, do profane the same, by unnecessarily pursuing their worldly business and recreations on that day, to this our great damage, as members of a Christian society; to the great disturbance of well disposed persons, and to the great damage of the community." But comprehensive as this enactment is, if the view we have taken of the true construction to be given to it is correct, it is very clear that it does not embrace within its prohibition every act which is not of a sacred or religious character, although it may not be required by necessity or charity. An interpretation so strict and narrow would not only not promote the object which the statute was designed to accomplish, but would produce serious inconvenience by impeding or preventing the performance of the common and ordinary duties and offices of domestic life. Many acts of a secular or temporal nature may be done without interfering essentially with the due observance of the Lord's day, or causing injury to individuals, (in the words of the preamble already cited,) "as members of a Christian society," or creating "disturbance to well disposed persons," or occasioning "great damage to the community." These results might follow from the general and indiscriminate pursuit on the Sabbath of any of the usual avocations and employments connected with the daily business and labor by which civilized society is supported and held together. But no such evils would be caused by the doing of acts, which, although in a strict sense they might be deemed to be in the nature of work, labor or business, and to have relation only to worldly affairs, are nevertheless of an occasional and exceptional character, and not incident to or connected with the ordinary transactions which constitute

the common business of every day life. An example will illus-trate the meaning which we intend to convey. A contract of marriage under our law is a purely civil contract. Nothing is added to its legal force or obligation by entering into it with relig-ious rites or ceremonies. Yet no one would contend that it would be unlawful for a civil magistrate to complete the execution of such a contract by joining parties in matrimony on the Sabbath, or that a contract of marriage entered into before and solem-nized by a magistrate would be invalid, because the act was done on the Lord's day. The reason is obvious. Such an act does not come within the category of transactions which are con-nected with or appertain to ordinary worldly business. It is neither " labor, business or work," in the sense in which these words are used by the legislature. The same reason applies with still greater force to the execution of a will on the Sabbath. It is not within the prohibition implied from the penalty im-posed by the statute. Although, strictly speaking, the making of a will may be properly considered as a secular transaction, having relation solely to worldly affairs, it is nevertheless a sol-emn act which no one ought to perform lightly or unadvisedly, but which is rather to be taken in hand " discreetly, soberly, rev-erently, and in the fear of God." In the words of an ancient writer, a will is to be regarded " as the last act of one's life, a farewell to the world, a memorial of immortality; it is therefore to be framed with care, reasoned with discretion, and built on a sound and constant deliberation." By the law of England, a will was regarded as an instrument of so serious and solemn a nature that original jurisdiction of such instruments was vested in the spiritual or ecclesiastical courts. 1 Swinb. 47, note *g*. If any act not of a strictly sacred or religious character can be appropriately performed on the Sabbath, it would seem that the execution of a will is one which may properly be held to be not inconsistent with a due observance of the day. Certainly it would require very explicit language to lead us to infer that the legislature intended to prohibit or restrain it. Even if the general words of the statute could by any fair interpretation be held to include it, we should be strongly inclined to hold that it

would fall within the exception as a work of necessity or charity, according to the construction which was given to those words by an early decision of this court, in which it was held that the exception does not extend merely to works which are physically or absolutely necessary, but comprehends all acts which it is morally fit and proper should be done on the Sabbath. *Commonwealth* v. *Knox,* 6 Mass. 76. But it is not necessary to put the decision on this ground, inasmuch as we are all of opinion that the execution of a will is not within the general prohibition of the statute. For this reason our judgment is that the will was rightly admitted to probate, and that an order must be entered *Decree affirmed.*